# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee and OCWEN LOAN SERVICING, LLC,** <br><br> Appellants, <br><br> v. <br><br> **WALTER KELLEY,** <br><br> Appellee. | Civil Action No. 7:19-CV-7 (HL) |

# ORDER

Before the Court is Deutsche Bank National Trust Company ("Deutsche Bank") and Ocwen Loan Servicing, LLC's ("Ocwen") appeal from the Bankruptcy Court's Order denying their Motion for Summary Judgment and granting Appellee Walter Kelley's Motion for Summary Judgment. The Bankruptcy Court found that no material factual dispute existed and that Appellee, acting as trustee of the bankruptcy estate, received bona fide purchaser status. The Bankruptcy Court rejected Appellants' argument that irregularities in the title record would put a potential buyer on inquiry notice. After considering both parties' briefs and reviewing the relevant law, this Court affirms the Bankruptcy Court's Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal comes from the Bankruptcy Court's December 26, 2018 Order. Appellee serves as the trustee for Darlene Bowers' ("Debtor") bankruptcy estate. The Debtor had purchased real estate in Thomas County, Georgia. On February 27, 2006, she granted Option One Mortgage ("Option One") a security deed on the property. The security deed was recorded in the Thomas County real estate records on March 1, 2006. On July 28, 2008, H&R Block Bank ("H&R Block") recorded a satisfaction of mortgage purporting to cancel the Option One security deed. The cancelation stated that Option One had assigned or devised its security deed to H&R Block and the Debtor had since paid the security deed in full. This cancelation, however, was in error. There is no recorded assignment of the security deed to H&R Block. No transfer between Option One and H&R Block ever occurred. Thus, H&R Block had no interest in the property when it sought to cancel the deed. Nevertheless, the cancelation was recorded in the Thomas County, Georgia real estate records.

On August 11, 2009, just over a year later, H&R Block recorded a second satisfaction of mortgage purporting to cancel the Option One security deed. This cancelation was also recorded in error.[1] Like the 2008 cancelation, the 2009

---

[1] Appellee previously disputed whether the cancelations were erroneous. On appeal, however, "Appellee agrees with Appellant[s'] statement of the case." (Doc. 9, p. 6).

cancelation stated that H&R Block held the security deed by transfer from Option One and that the deed had been paid in full. Again, no recorded assignment of the security deed from Option One to H&R Block is present in the Thomas, County title records. H&R Block still did not have any security interest in the property at the time of the second cancelation. The Thomas County title records never reflected H&R Block having a recorded interest in the property. No party acted to correct the title record until the Debtor initiated bankruptcy proceedings nearly twelve years later.

On February 28, 2018, the Debtor filed a petition seeking relief under Chapter 7 of the Bankruptcy Code. Appellee was appointed as trustee of the Debtor's estate in the bankruptcy proceedings. When the Debtor filed for bankruptcy, she had not fulfilled the security deed's obligations. Appellee sought to sell the Debtor's property free and clear of the security deed. According to Appellee, with the two cancelations recorded in the title records, a bona fide purchaser—unaware that the cancelations were erroneous—would take the property free of the security deed.

Appellant Deutsche Bank received an assignment of the security deed from Option One on August 7, 2018. Appellant Ocwen services the loan. Appellants now seek to maintain the security deed as a lien or charge upon the property. Appellee initiated this suit in the Bankruptcy Court to determine whether a bona fide purchaser may buy the property free of the security deed. The parties filed cross

motions for summary judgment. The Bankruptcy Court granted Appellee's Motion for Summary Judgment and denied Appellants' motion. Appellants timely filed this appeal.

## II. STANDARD OF REVIEW

A district court functions as an appellate court when reviewing bankruptcy judgments on appeal. *Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000). The district court reviews the bankruptcy court's legal conclusions *de novo*, and it reviews the bankruptcy court's findings of fact for clear error. *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC (In re Bayou Shores SNF, LLC)*, 828 F.3d 1297, 1304 (11th Cir. 2016). Here, the parties do not challenge the Bankruptcy Court's findings of fact. Appellants dispute its legal conclusions denying their Motion for Summary Judgment and granting Appellee's motion.

## III. MOTION FOR SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Courts grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). Each party may support their factual assertions by citing to evidence in the record, including the discovery and disclosure materials on file, affidavits or declarations, stipulations, or other materials. Fed. R. Civ. P. 56(c)(1). When considering a motion for summary judgment, the court evaluates all the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The court may not make credibility determinations or weigh the evidence. *Id.*; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Credibility determinations and weighing of the evidence are functions solely of a jury—"not those of a judge." *Anderson*, 477 U.S. at 255.

## IV. ANALYSIS

Under 11 U.S.C. § 544(a)(3), a bankruptcy trustee may acquire the interest of a bona fide purchaser free and clear of any encumbrances. This means that whoever buys the real property from the trustee acquires the property as a bona fide purchaser. Appellee is the Chapter 7 trustee, and he seeks to sell the Debtor's property. Appellee filed this action seeking an order determining whether the Debtor's property is subject to Appellants' security deed. Appellee is attempting to assert the interest of a potential bona fide purchaser regarding the sale of the property. He argues that H&R Block's two purported cancelations of the security deed made the title record appear free of all encumbrances. Therefore, when the

5

Debtor filed for Chapter 7 Bankruptcy, and Appellee was appointed as trustee, a potential buyer could attain bona fide purchaser status and buy the property free of all encumbrances as set forth in § 544(a)(3).

Appellants argue that "irregularities in the chain of title," including H&R Block's cancelations, preclude bona fide purchaser status because the title record would have put buyers on inquiry notice of the title issues. The parties agree that if a potential purchaser inquired about the title, he would have discovered Appellants' security interest on the property. And that knowledge would defeat any claim of bona fide purchaser status. The Bankruptcy Court found that the cancelations were insufficient to warrant inquiry notice, and thus granted Appellee a bona fide purchaser interest in the property. Appellants challenge the Bankruptcy Court's legal findings. To review the Bankruptcy Court's Order, this Court will analyze the standards for establishing bona fide purchaser status, apply them to the title record at issue, and determine whether the "irregularities" Appellants complain of would defeat bona fide purchaser status.

### A. Bona Fide Purchaser Status

The Court applies Georgia law to determine bona fide purchaser status. Georgia law protects bona fide purchasers for value "against outstanding interests in land of which the purchaser has no notice." *Brock v. Yale Mortg. Corp.*, 287 Ga. 849, 852 (2010); *see* O.C.G.A. § 23-1-19 ("If one with notice sells to one without notice, the latter shall be protected."). To qualify as a bona fide purchaser, an

6

individual "must have neither actual nor constructive notice" of the encumbrance at issue. *Deutsche Bank Nat'l Tr. Co. v. JP Morgan Chase Bank, N.A.,* 307 Ga. App. 307, 309 (2010). Courts disregard the trustee and debtor's knowledge of the encumbrance when establishing bona fide purchaser rights under 11 U.S.C. § 544(a)(3). *See* 11 U.S.C. § 544(a)(3) ("The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of . . . a bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser . . . ."). The potential purchaser, however, "is charged with constructive notice of the contents of a recorded instrument within its chain of title." *Rolan v. Glass*, 305 Ga. App. 217, 218 (2010). The chain of title "includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument." *VATACS Grp., Inc. v. HomeSide Lending, Inc.*, 276 Ga. App. 386, 391 (2005). The issue before the Court is whether H&R Block's erroneous cancelations in title record would have prompted a potential buyer to inquire about issues in the chain of title.

### B. Constructive Notice and Inquiry Notice

Constructive notice includes a duty to inquire. If information in the title record is sufficient to "excite a reasonable purchaser's attention regarding the existence of a lien or other issue affecting the title to the property, the purchaser has a duty to make a further inquiry." *Gallagher v. Buckhead Cmty. Bank*, 299 Ga. App. 622,

7

626 (2009). Any knowledge that such an inquiry would reveal is imputed to the purchaser. *See* O.C.G.A. § 23-1-17 ("Notice sufficient to excite attention" includes "notice of everything to which it is afterwards found that such inquiry might have led."); *Gallagher*, 292 Ga. App. at 626 ("[A] purchaser of real property . . . is also presumed to know every other fact which the examination suggested.") (quotation marks omitted). Once the duty to inquire arises, a purchaser's ignorance of issues affecting the title because he failed "to make the additional inquiry will be the equivalent of the purchaser's constructive knowledge of that fact." *Id.*; *see* O.C.G.A. § 23-1-17 ("Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties."). Appellants argue that irregularities in the property's title record would put a hypothetical purchaser on inquiry notice.

**C. Irregularities in the Title Record**

Appellants contend the Bankruptcy Court erred in its legal conclusions that H&R Block's two erroneous cancelations would not give rise to inquiry notice. Purchasers are entitled to rely upon documents in the title records that are "regular on [their] face and duly recorded in the chain of title." *JP Morgan Chase Bank, N.A.*, 307 Ga. App. at 309. Appellants argue on appeal that the two cancelations constitute "irregularities" in the title record sufficient to impute inquiry notice to a potential buyer. The Court assesses the chain of title from the perspective of a hypothetical buyer. *Id.*

1. H&R Block as a "Stranger" to the Deed

First, Appellants argue that the title record was irregular because "a stranger to the deed" recorded the purported cancelations. In other words, because H&R Block did not have any recorded interest in the security deed, its purported cancelations would incite inquiry as to issues with the title. The Court disagrees. H&R Block failing to record its purported assignment from Option One would not necessarily mean that H&R Block was a "stranger" to the deed. Both cancelations indicate that H&R Block was the holder of the security deed. But no recorded assignment appears in the chain of title. The lack of record of the assignment from Option One to H&R Block does not give rise to inquiry notice because recording is not required to create a valid assignment. *See, e.g.*, O.C.G.A. § 44-14-63(a) ("Deeds to secure debt . . . not recorded shall remain valid against the persons executing them.").

The purpose of recording statutes is to provide notice to individuals interested in the real property and to protect both the person holding such recorded interest and subsequent bona fide purchasers. *See Lionheart Legend, Inc. v. Norwest Bank Minn. Nat'l Ass'n*, 253 Ga. App. 663, 667 (2002) ("[T]he recording requirement is intended to protect innocent parties."). Recording does not generally affect the rights between the two parties to an agreement. *Id.* ("A deed not executed in precisely the manner prescribed . . . is not properly recordable and

therefore does not give constructive notice to all the world. As between the parties themselves, however, the deed is valid and binding.").

Under O.C.G.A. § 44-14-64(e), "the transfer by a financial institution or lender of a deed to secure debt . . . without recording" the transfer "shall be effective to provide the new transferee with priority over all subsequent claims." The transferee's rights are not "lessened by the fact that the transfer is not recorded." *Id.* Similarly, when deeds or mortgages are transferred, Georgia law requires recordation, but a failure to record does not "affect the validity or force" of the deed or mortgage as "between the parties." § 44-2-2(c); *see also Baxter v. Bayview Loan Servicing, LLC*, 301 Ga. App. 577, 583 (2009) ("[T]he grantee of a security deed is under no duty to the grantor to have the deed recorded; as between the original parties, the deed is valid irrespective of whether it is recorded or not.") (quoting *Jackson v. Bank One*, 287 Ga. App. 791, 793 (2007)). Therefore, failing to record the assignment does not suggest that the assignment is invalid.

A lack of recording is consistent with H&R Block's decision to record the cancelations under § 44-14-67(c), providing for the cancelation of a security deed when "the original [deed] has been lost, stolen, or otherwise mislaid." Had the original deed been lost, stolen, or mislaid, it would be more likely that the assignment was not recorded. *See, e.g.*, § 44-14-64(b) ("Transfers of deeds to secure debt may be endorsed upon the original deed."). The Court finds that the hypothetical purchaser is entitled to rely on the purported assignment and assume

that H&R Block had interest in the property at the time of the cancelation. Although the actual recording was absent, evidence of the assignment existed on the face of the cancelations. To the hypothetical purchaser, the lack of recording would not nullify the purported assignment between Option One and H&R Block. Therefore, when a hypothetical purchaser looks to the chain of title, it would appear to be intact.[2]

Defendants argue that the chain-of-title issues here are similar to *Household Financial Services, Inc. v. Neighbors (In re Neighbors)*, No. 05-61193, 2007 WL 7022203, *4 (Bankr. S.D. Ga. Feb. 8, 2007). There, the holder of a security deed assigned the same interest to two different parties, Household Financial Services, Inc. ("HFS") and Household Realty Corporation ("HRC"). *Id.* at *1. The holder of the security deed first transferred and assigned the deed to HFS, and then, it mistakenly assigned the same deed to HRC. *Id.* After receiving this assignment, HRC sought to cancel the deed. *Id.* Like the present case, the owner of the property

---

[2] Appellants attempt to liken the cancelations to a "wild" deed. Under Georgia law, purchasers are "not charged with constructive notice of interests or encumbrances which have been recorded outside the chain of title." *Kitchings v. Ameris Bank*, 309 Ga. App. 837, 840 (2011). In other words, bona fide purchasers can rely on what interests or encumbrances are properly recorded in the chain of title. And if surprises or disputes arise regarding the title, the bona fide purchaser is protected against unrecorded interests. "Wild deed" rules are inapposite to the cancelations at issue. Disregarding these cancelations purporting to be within the chain of title would expose purchasers to concealed encumbrances on the property. Purchasers would have to inquire about every purported cancelation and could not rely on the title records.

11

in *In* re *Neighbors* filed for bankruptcy, and the trustee sought to avoid the deed held by HFS because of HRC's purported cancelation. *Id.* The trustee argued that a bona fide purchaser would have concluded that HRC validly canceled the security deed assigned to HFS. *Id.* at *2. The bankruptcy court disagreed and found that the title issues defeated bona fide purchaser status. The hypothetical buyer would be on notice to inquire about the two assignments to HFS and HRC as well as HRC's subsequent cancelation. *Id.* at *3–*4.

Defendants cite this case to assert that H&R Block's cancelations are parallel to HRC's cancelation that incited inquiry. (Doc. 7, p. 22). According to Defendants, because H&R Block, like HRC, did not hold a properly recorded interest in the property, H&R Block's cancelations incite inquiry. (*Id.* at pp. 22–23). But *In re Neighbors* is inapplicable to the present case. There, the bankruptcy court found the title record created inquiry notice because an examination of the chain of title revealed that the same deed had been assigned to two different parties. *In re Neighbors*, 2007 WL 7022203, *3–*4. Therefore, obvious chain-of-title issues were present on the face of the title record. The two assignments—pointing to the same "deed book and page numbers" in the title record—"would have alerted a hypothetical purchaser to the uncertainty concerning the status of both HFS and HRC's interest in the Debtor's property." *Id.* at *3. The double assignment to HFS and HRC was the bankruptcy court's primary reason for finding inquiry notice—not merely because HRC's assignment and cancelation were not properly recorded.

12

In the present case, no chain-of-title issues appear on the face of the title record. First, the Debtor executed a security deed to Option One. Then, H&R Block's cancelations stated that it had received an assignment from Option One before it purported to cancel the deed. Accordingly, the chain of title appeared consistent. The Court can trace a direct line in the title from the Debtor to H&R Block. Whereas in *In re Neighbors*, it was clear that the chain of title had split two ways, with one party seeking to cut off the other party's interest. In contrast, here nothing in the title is inconsistent with H&R Block purportedly receiving an assignment.

Appellants insist that the chain-of-title issues are conspicuous because no recording existed for the purported assignment between H&R Block and Option One, and therefore, H&R Block's cancelations were clearly invalid. As discussed further below, however, H&R Block's lack of any recorded assignment does preclude a valid cancelation.

The Bankruptcy Court found that a bona fide purchaser could rely on the cancelations without a recorded interest under O.C.G.A. § 44-14-64(f). Section § 44-14-64(f) provides:

> [w]here the holder of the right to service or supervise the servicing of the transferred deed to secure debt and the indebtedness therein secured is a financial institution or lender as described in subsection (d) of this Code section, it shall have the same rights . . . concerning the . . . cancelation of the deed and indebtedness as to third parties as if no such transfer had taken place.

13

The Bankruptcy Court found that § 44-14-64(f) "permits the recordation of a cancelation by a party without a recorded assignment of the security deed." The Bankruptcy Court concluded, therefore, that although H&R Block may be a "stranger" to the deed, this fact would not incite inquiry because under certain circumstances, parties without a recorded assignment may validly cancel a security deed.

Appellants contend that the Bankruptcy Court misapplied § 44-14-64(f). They argue that the present facts do not conform to § 44-14-64(f)'s requirements, and thus H&R Block would not have had authority to file a cancelation under § 44-14-64(f). Specifically, Appellants complain that § 44-14-64(d)'s conditions are not met as required to effectuate a valid cancelation under § 44-14-64(f).

Appellants' argument misses the point. Whether the cancelations were valid and enforceable against Appellants is not an issue. *See JP Morgan Chase Bank, N.A.*, 307 Ga. App. at 310 (finding bona fide purchaser status despite unauthorized release of security deed).[3] Of course, the cancelations were invalid as between Appellants and the Debtor. *Id.* The proper inquiry is whether the chain of title would

---

[3] In *JP Morgan Chase Bank, N.A.*, a recorded reconveyance of property purported to release the security interest in the property. 307 Ga. App. at 310. The holder of the security interest argued that bona fide purchaser status could not be attained because the release was fraudulently recorded. *Id*. In fact, the release was signed by someone who was not an employee or agent of the party purporting to reconvey the security deed. *Id.* at 314. The Georgia Court of Appeals found that even though the release was unauthorized, it appeared facially regular, and accordingly, a bona fide purchaser would take the property free of the security deed. *Id*. at 310.

appear "regular" on its face to a third-party purchaser. A third-party purchaser would not see H&R Block as a stranger to the deed because the cancelations indicated that H&R Block held the security deed. Or, assuming no suggestion of title transfer was present, Georgia law permits supervisors with no interest to cancel security deeds. Where, in some instances, the law permits a valid assignment without recordation, § 44-14-64(e), or a valid cancelation without any recorded interest, § 44-14-64(f), the purchaser is permitted to assume the cancelation was valid because it appears so on the face of the chain of title.

To hold otherwise would require a hypothetical purchaser to search for or know information that is beyond the face of the chain of title.[4] For example, Appellants argue that the requirements of § 44-14-64(d) are not met, and therefore, cancelation under § 44-14-64(f) is invalid. Compliance with § 44-14-64(d) concerns transfer by "a financial institution having deposits insured by an agency of the federal government or a transfer by a lender who regularly purchases or services residential real estate loans aggregating a minimum of [one] million [dollars]

---

[4] Georgia law does not impute knowledge of information outside the chain of title to a potential purchaser, unless the purchaser is confronted with such information. For example, "[c]ircumstances that have been deemed sufficient to incite a duty to inquire into facts outside the recorded deed records, or at least raise an issue with respect to the purchaser's duty to inquire, include facts showing the purchaser had been informed of the existence of prior unrecorded deeds; evidence of open and notorious adverse possession of the property . . .; and evidence sufficient to put a mortgagee on notice of a fraudulent scheme." *Darling Int'l, Inc. v. Carter*, 294 Ga. 455, 460–61 (2014) (internal citations omitted).

15

secured by a first deed to secure debt encumbering real estate improved or to be improved by the construction thereon of one to four family dwelling units . . . ." Based on the face of the chain of title, the hypothetical purchaser would have no idea whether the transferor fell into the category of financial institutions or lenders prescribed by § 44-14-64(d). A purchaser could not confirm a valid cancelation under § 44-14-64(f) without doing research beyond the face of the title. Therefore, noncompliance with these statutes does not defeat bona fide purchaser status. *See, e.g.*, *Darling Int'l, Inc.*, 294 Ga. at 459 (finding that a deed not properly recorded as required by statute is voidable "but as to a subsequent bona fide purchaser without notice of the failure to comply with the statute, the deed is not void").

### 2. H&R Block's Two Consecutive Cancelations

Appellants also argue that the two cancelations would prompt purchasers to inquire why the security deed needed to be canceled a second time. The fact that H&R Block recorded two cancelations would not incite inquiry because it would not pique a hypothetical buyer's "attention regarding the existence of a lien or other issue affecting the title to the property." *Gallagher*, 299 Ga. App. at 626. As mentioned above, the cancelations indicated that H&R Block had an assignment, and therefore, to the hypothetical buyer there were no chain of title issues. Nothing in the chain of title would have put a party on inquiry that the security deed might remain in full force and effect. Two cancelations convey quite the opposite—that

the security deed was certainly *not* in effect. And that no one sought to correct the cancelations for more than a decade after they were recorded reinforces the notion that no chain-of-title issues existed as a result of the cancelations.

Viewed in the light most generous to Appellants, the recording of two cancelations would at most indicate a clerical error by H&R Block such as accidentally recording the valid cancelation a second time. This is not the sort of circumstance that would have put someone "fully upon his guard" and "induce serious inquiry" about the title. *Montgomery v. Barrow*, 286 Ga. 896, 897 (2010) (quoting *Price v. Watts*, 223 Ga. 805, 805 (1967)). Simply, no reasonable jury would find that the filing of two cancelations would put a hypothetical purchaser on inquiry notice when those cancelations were (1) consistent with each other; (2) purportedly within the chain of title; and (3) filed more than decade before the Debtor initiated bankruptcy proceedings without correction.

### D. Equitable Relief

Having denied Appellants arguments in law, the Court now turns to Appellants' arguments in equity. Appellants request the Court to grant equitable relief by reinstating the security deed. Georgia law allows the court to reinstate cancelations "obtained by fraud or mistake." *Decatur Fed. Sav. & Loan v. Gibson*, 268 Ga. 362, 364 (1997) (quoting *Lanning v. Sockwell*, 137 Ga. App. 479, 482 (1976)). But "[t]he power to relieve mistakes shall be exercised with caution." O.C.G.A. § 23-2-21(c). Here, correcting the mistake would be justified; "the

17

evidence [is] clear, unequivocal, and decisive" that H&R Block made the cancelations in error. *Id.* However, Georgia law prohibits equitable relief if such relief would interfere with a bona fide purchaser. O.C.G.A. § 23-1-20 ("A bona fide purchaser for value without notice of an equity will not be interfered with by equity."); *Burke v. Anderson*, 40 Ga. 535, 538 (1869) ("[I]f the right of a bona fide purchaser, without notice, will be interfered with by the correction of the mistake, the relief will not be granted."). The Court established above that a hypothetical buyer would attain bona fide purchaser status. That status and its protections extend to Appellee under 11 U.S.C. § 544(a)(3). The Court will not interfere with the bona fide purchaser by reinstating the cancelations.

## V. CONCLUSION

The Court agrees with the Bankruptcy Court's finding that the title records do not give rise to inquiry notice, and consequently, a hypothetical buyer would attain bona fide purchaser status. Accordingly, the Court **AFFIRMS** the Bankruptcy Court's Order.

**SO ORDERED**, this 10th day of April, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

kac